George T. Waddoups, #3965
Riley T. Waddoups, #12267
ROBERT J. DEBRY & ASSOCIATES
4252 South 700 East
Salt Lake City, UT 84107
Telephone: (801) 262-8915
gwaddoups@robertdebry.com
Attorney for Plaintiffs
_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LIUFAU ALUSA and KATIE ALUSA<br><br>                    Plaintiffs,<br><br>vs.<br><br>SALT LAKE COUNTY, UTAH; SALT LAKE COUNTY SHERIFF'S OFFICE aka UNIFIED POLICE DEPARTMENT aka SALT LAKE VALLEY LAW ENFORCEMENT SERVICE AREA; SALT LAKE COUNTY SHERIFF JAMES M. WINDER, individually and in his official capacity; SALT LAKE COUNTY DEPUTY SHERIFF TIANA BROOS, individually and in her official capacity, TASER INTERNATIONAL, INC. an Arizona Corporation,  JOHN DOES II-X, and RELATED SUBCONTRACTORS, individually and in their official capacity.<br><br>                    Defendants. | **AMENDED COMPLAINT AND JURY DEMAND**<br><br><br><br><br><br><br><br><br><br><br><br>Case No. 2:11-cv-00184-CW<br><br>Judge Clark Waddoups |

Plaintiffs, by and through their attorney of record, plead and allege as follows:

**I.**

**INTRODUCTION**

1.  Plaintiffs seek money damages for Plaintiff Liufau Alusa being wrongfully tasered multiple times by Deputy Salt Lake County Sheriff, Tiana Broos.  Plaintiff, Katie Alusa, asserts a claim for negligent infliction of emotional distress and loss of consortium pursuant to Utah Code Annotated § 30-2-11.

2.  This action is brought under the laws of Utah and the United States Constitution against the defendants Salt Lake County; Salt Lake County Sheriff's Office; Unified Police Department formerly known as Salt Lake County Sheriff's Office aka Salt Lake Valley Law Enforcement Service Area; Salt Lake County Sheriff James N. Winder, individually and in his official capacity; Deputy Salt Lake County Sheriff Tiana Broos, individually and in her official capacity; Taser International Inc., an Arizona Corporation; and John Does II-X, related subcontractors and contractors in their individual and representative capacity.  This action is brought against the defendants for their conduct complained of herein.  Salt Lake County Sheriff James Winder is the supervisory officer responsible for the conduct of Deputy County Sheriff Tiana Broos and for failure to take corrective action with respect to Deputy Broos who was improperly, inadequately, and insufficiently trained and supervised; for his failure to implement meaningful procedures and policies to discourage lawless official conduct; and against Salt Lake County, the

employer of Sheriff Winder and Deputy County Sheriff Tiana Broos which is sued as a person pursuant to Title 42-U.S.C. § 1983.

## II.

## JURISDICTION AND VENUE

3.  This action is brought pursuant to 42 U.S.C. § 1983 and the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

4.  This court has jurisdiction over the Plaintiffs claim pursuant to 28 U.S.C. § 1333 because the claim arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. §1343(3)(4) because the case is maintained to redress the deprivation under color of State Law, right, privileges, and immunities secured by the Constitution and by the Act of Congress providing for the protection of civil rights, including 42 U.S.C. §1983 and the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

5.  This court has pendant jurisdiction over any claims arising under Utah Law pursuant to 28 U.S.C.§1367.

6.  The Plaintiff properly filed and served notice to appropriate entities pursuant to Utah Code Annotated § 63G-7-401 et seq.  More than 60 days have elapsed after filing of the notice of claim.

7.  Pursuant to 18 U.S.C. §1391 (b)(2) proper venue for this case is the United States District Court for the District of Utah, Central Division because the act and omissions complained of occurred within the District of Utah, Salt Lake County.

### III.

### PARTIES

8.  At all material times, Plaintiff Liufau Alusa was a resident of Salt Lake County, State of Utah.

9.   At all material times herein, the Plaintiff Katie Alusa was residing in Salt Lake County, State of utah.

10.  At all material times herein, Salt Lake County is a political subdivision of the State of Utah and capable of being sued.  Salt Lake County employed Sheriff Jim Winder as the Salt Lake County Sheriff during this claim.

11.  Salt Lake County Sheriff's Office changed its name to Unified Police Department.  Since the tasering event, Unified Police Department is now listed as Salt Lake Valley Law Enforcement Service Area.   Accordingly, the Plaintiff has added the Unified Police Department and Salt Lake Valley Law Enforcement Service Area as Defendants in this particular matter.  Defendant Winder now is employed by the Unified Police Department and/or Salt Lake Valley Law Enforcement Service Area (hereafter referred collectively as Salt Lake Sheriff's Office and/or Defendants).

4

12.   At all material times herein, Defendant Deputy County Sheriff Tiana Broos (hereafter Deputy Broos) was employed by Salt Lake County Sheriff's Office and acting in her individual and official capacity.   At all material times herein, the Deputy Broos was a citizen of the State of Utah and resided in Midvale City, State of Utah.

13.   At all material times herein, the defendants, John Does 2-10 were employees of Salt Lake County Sheriff's Office; acting as agents, servants, and employees of the Salt Lake County Sheriff's Office and related contractors and subcontractors.   John Does II-X are sued individually and in their official capacity.

**IV.**

**<u>STATEMENT OF FACTS</u>**

14.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 13 above.

15.   On April 18, 2009, Liufau Alusa was talking on his cell phone near a dumpster at his apartment complex, at the approximate location of 871 Canyon Ridge Way in Midvale, Utah.

16.   Mr. Alusa had been drinking that day.   He was having a bad day and was upset.   Mr. Alusa struck the dumpster in the garbage area of the apartment complex.

17.   Mr. Alusa's wife, Katie Alusa, went down to the parking lot area to talk to her husband.

5

18.   As Katie Alusa was talking to her husband, Deputy Broos was walking her dog with her boyfriend.  She was out of her jurisdiction.

19.   Deputy Broos lived at the same apartment complex.

20.   Mr. Alusa exchanged words with Deputy Broos.

21.   Katie Alusa took her husband by the arm and went up to their apartment to avoid any further exchange.  Deputy Broos told the acquaintances of Mr. Alusa to stay put downstairs while she followed Mr. Alusa upstairs to his apartment.

22.   For some unknown reason, Deputy Broos followed Plaintiffs upstairs to their apartment, telling them not to shut the door.  Mr. Alusa shut the door.

23.   Sometime later, Mr. Alusa went back down stairs to go on a walk.

24.   While Mr. Alusa was in the parking lot, Deputy Broos called out to Mr. Alusa.  Mr. Alusa continued to walk.

25.   As Mr. Alusa was walking, Deputy Broos tasered Mr. Alusa in the back.

26.   Mr. Alusa fell to the ground.

27.   The witnesses at the scene were screaming at Deputy Broos to stop tasering Mr. Alusa.

28.   Deputy Broos continued to taser Mr. Alusa.

29.   Even though everyone was telling Deputy Broos to stop tasering Mr. Alusa, she continued to do so until Mr. Alusa was unconscious.

6

30.  Katie Alusa believes that it seemed like Deputy Broos was tasering her husband for approximately 8-10 minutes.  The record demonstrates that Deputy Broos tasered Mr. Alusa at least four (4) times.

31.  Katie Alusa kept telling Deputy Broos that her husband had a heart condition, and to stop tasering him.

32.  Deputy Broos was out of control and continued to yell at everyone on the scene while she was tasering Mr. Alusa.

35.  Eventually, the Midvale City Police came to the scene.

36.  Katie Alusa talked to Sergeant John Barker.  Mr. Alusa was taken by ambulance to the Intermountain Medical Center.

37.  During this time, Katie Alusa witnessed that Deputy Broos never told Mr. Alusa he was under arrest or that there were any particular charges against him.  Mr. Alusa was never read his Miranda rights.  Mr. Alusa had not done anything, other than have a bad day and was upset over information he received by telephone.  However, Deputy Broos continued to taser Mr. Alusa until he was unconscious.

38.  Prior to Deputy Broos tasering Mr. Alusa, Mr. Alusa had gone back to his apartment with his wife.

39.  Located downstairs in the parking lot were friends or employees of Mr. Alusa.

40.   Deputy Broos  went down the stairs and talked to Mr. Alusa's friends in the parking lot, and started to harass Mr. Alusa's friends.

41.   Deputy Broos was not in her jurisdiction.

42.   While Deputy Broos was harassing Mr. Alusa's friends, Mr. Alusa reappeared.

43.   Rather than walk by this particular area, Mr. Alusa walked a different direction.  Deputy Broos' boyfriend attempted to talk to Mr. Alusa.  Mr. Alusa did not want to talk, and continued to walk.

44.   As Mr. Alusa was walking, Deputy Broos tasered Mr. Alusa in the back.

45.   According to the witnesses, Deputy Broos did not give Mr. Alusa any other warning or reason why he needed to stop at this particular time.  She simply tasered him.

46.   According to the witnesses, Mr. Alusa was not doing anything at this particular time.  He did not say anything and was not doing anything, just walking.

47.   As soon as Deputy Broos tasered Mr. Alusa, one of the witnesses said, "Oh, my God," and the witness ran to the area where Mr. Alusa had been tasered.  The witnesses observed that Mr. Alusa was on the ground, flopping around and extending his back because of the pain.  He heard Mr. Alusa say, "Okay!  Okay!  Okay!"

48.   The witness observed that Mr. Alusa was begging Deputy Broos to stop. However, she continued to taser him.  The witness observed Deputy  say, "Stop resisting."  The witness heard Mr. Alusa say, "I'm not!  I'm not resisting!"

49.   The witnesses observed Deputy Broos continue to taser Mr. Alusa until he lost consciousness.  Another Officer showed up right after that.

50.   The witness observed blood on the ground.  The witness showed Mr. Alusa's wife, Katie Alusa, all the blood.

51.   The witness observed that when Mr. Alusa was tasered to the ground, he hit his head on the ground and his nose was bleeding.

52.   The witness observed and heard Mr. Alusa's wife telling the Officer to "Stop! Stop! Stop!  He has a heart condition!"  Deputy Broos  told her to shut up.

53.   Katie Alusa kept telling Deputy Broos that he has a heart condition and "You're going to kill him!"  Deputy  told Katie Alusa to shut up.

54.   The witness observed that Katie Alusa was about 25 feet away from Deputy Broos  when she kept telling her to stop tasering her husband because he had a heart condition.

55.   The witness observed one of the Officers telling Mr. Alusa to put his hands behind his back.  Mr. Alusa was so out of it, he could not do anything.  The witness observed an Officer slam his knee into the back of Mr. Alusa's neck and cuffed him face down, bleeding and unconscious.

9

56. The witness observed that the Officers did not have any concern for Mr. Alusa, and did not check his vitals after he had been tasered.

57. The witness observed the ambulance. Mr. Alusa was placed on a gurney and transported to the hospital.

58. After this incident, the witness received a visit by Deputy Broos and her boyfriend. Deputy Broos wanted to know if this witnesses knew anything about her windows being broken out. The witnesses did not know anything about Deputy Broos' windows being broken out.

59. The witness indicated that Deputy Broos wanted to blame the Alusas. The witness did not think the Alusas would have been involved in that, because they are not that kind of people.

60. Deputy Broos wanted confirmation that the witness had seen Mr. Alusa swinging at her. The witness indicated to Deputy that this was not true; that he had seen everything and Mr. Alusa was not swinging.

61. To the witness, it appeared that Deputy Broos was trying to cover up something or trying to make up something.

62. Deputy Broos told the witness that any other Officer would have used deadly force; that she decided not to use deadly force.

63. The witness indicated that Deputy Broos told him about Mr. Alusa's criminal record and blood tests.

10

64.  Another witness was told by an Officer that he could not leave the area. Deputy Broos told this witness to stay at a particular location because she wanted to talk to him.  Another witness was told by an Officer that he could not leave the area.

## V.

## <u>FIRST CLAIM FOR RELIEF</u>

TITLE 42 U.S.C. § 1983, VIOLATION OF THE FIRST, FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND STATE OF UTAH CONSTITUTION BY SALT LAKE COUNTY; SALT LAKE COUNTY SHERIFF, JAMES M. WINDER; SALT LAKE COUNTY SHERIFF'S OFFICE/UNIFIED POLICE DEPARTMENT; SALT LAKE COUNTY DEPUTY SHERIFF TIANA BROOS; JOHN DOES 2-10, IN THEIR OFFICIAL CAPACITIES.

65.  Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 64 above.

66.  The Plaintiffs allege that the Defendants are charged with a responsibility to protect and serve the public by properly hiring, supervising, training, disciplining, and controlling law enforcement officers under their command, including Deputy Broos.

67.  The Plaintiffs allege that the Defendants' duties include promulgating and enforcing laws, rules and regulations regarding detaining individual citizens, including Mr. Alusa, and/or the use of excessive force.

68.  The Plaintiffs allege that the Defendants, under color of law, did not set or follow proper policy, procedure, ordinance, regulation, usage, custom or practice as to

11

when it is appropriate to stop or detain a citizen without informing that citizen of any objective, lawful, probable or reasonable cause or grounds.

69.  The Plaintiffs allege that the Defendants' policy is deliberate and indifferent to the constitutional rights of citizens, including Mr. Alusa.

70.  The Plaintiffs allege that the Defendants failed to properly hire, supervise, train, discipline and control law enforcement officers under their command, including Deputy Broos and John Does 2-10; and failed to ensure compliance with the laws, rules, regulations, regarding the use of excessive force constituting to deliberate indifference to the rights of persons regarding police interfacing with citizens, including Mr. Alusa.

71.  The Plaintiffs allege that the Defendants failed to properly hire, supervise, train, discipline and control Deputy Broos in the proper use of excessive force.

72.  The Plaintiffs allege that the Defendants engaged in inadequate training, supervision and discipline of Deputy Broos.

73.  The Plaintiffs allege that the Defendants' failure to ensure compliance to the laws, rules, regulations, and constitution regarding stopping and detaining private citizens, including Mr. Alusa, and the use of excessive force was so reckless and/or grossly negligent that the misconduct and injury to Mr. Alusa was inevitable and foreseeable.

74.  The Plaintiffs allege that the Defendants' acts or omissions were performed under the color of law, which deprived Mr. Alusa of his First, Fourth, Fifth and Fourteenth Amendment Rights, and other Constitutional Rights, and his State Constitutional rights.

75.  The Plaintiffs allege that the Defendants and Deputy Broos acted unobjective and unreasonable in harassing and continuing to stop and detain Mr. Alusa for no legal or justifiable purpose.

76. The Plaintiffs allege that the injuries suffered by Mr. Alusa were directly and proximately caused by the deliberate indifference and failure of the Defendants' conduct in properly hiring, supervising, training, disciplining, and controlling Deputy Broos, and John Does II-X, and the deliberate indifference and failure to promulgate and ensure compliance with the laws, rules and regulations regarding the illegal and unreasonable stop and the use of unreasonable excessive force on Mr. Alusa.

**VI.**

**SECOND CLAIM FOR RELIEF**

TITLE 42 U.S.C. § 1983, VIOLATION OF THE FIRST, FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND STATE OF UTAH CONSTITUTION BY SALT LAKE COUNTY; SALT LAKE COUNTY SHERIFF, JAMES M. WINDER; SALT LAKE COUNTY SHERIFF'S OFFICE/UNIFIED POLICE DEPARTMENT; SALT LAKE COUNTY DEPUTY SHERIFF, TIANA BROOS; AND JOHN DOES 2-10; IN THEIR INDIVIDUAL CAPACITIES.

77. The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 76 above.

78. The Plaintiffs allege that the acts or omissions of the Defendants constitute actions or omissions under the color and pretense of the laws, statutes, ordinances, regulations, customs and usage for the State of Utah and Salt Lake County.

79. The Plaintiffs allege that the Defendants are charged with a duty to protect and serve the public by properly hiring, supervising, training, disciplining, and controlling law enforcement officers under their command, including Deputy Broos, and by promulgating and enforcing laws, rules and regulations regarding stopping and detaining private citizens, including Mr. Alusa, and/or the use of excessive force so that the law is not violated.

80. The Plaintiffs allege that the Defendants failed to properly hire, supervise, train, discipline, and control law enforcement officers under their command and/or supervision, including Deputy Broos such that the laws, rules and regulations regarding stopping and detaining individuals and/or the use of excessive force were violated by Deputy Broos.

81. The Plaintiffs allege that the Defendants knew or should have known that Deputy Broos engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Mr. Alusa.

14

82.  The Plaintiffs allege that the Defendants' failure to properly supervise, train, discipline, and control Salt Lake County Deputies under their control, including Deputy Broos, in light of their knowledge, and their failure to promulgate and ensure compliance with the laws, rules, and regulations regarding the stopping and detaining of private citizens and/or the use of excessive force, amount to knowingly acquiescence, reckless disregard and/or deliberate indifference to the constitutional rights of citizens, including Mr. Alusa.

83.  The Plaintiffs allege that the Defendants' need for training was so obvious that said Defendants' failure to provide training was deliberate and indifferent.

84.  The Plaintiffs allege that the Defendants' negligent acts or omissions, and the failure to properly supervise, train, discipline and control Deputy Broos is the direct and proximate cause of the constitutional injuries suffered by the Plaintiffs.

## VII.

## <u>THIRD CLAIM FOR RELIEF</u>

TITLE 42 U.S.C. § 1983, VIOLATION OF THE FIRST, FOURTH AND FOURTEENTH AMENDMENTS BY DEFENDANTS DEPUTY BROOS AND JOHN DOES II-X.

85.  The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 84 above.

86. The Plaintiffs allege that the acts and omissions of the Defendants occurred within the course and scope of their employment with Salt Lake County, and

the Salt Lake County Sheriff's Office, and under the color and pretense of laws, statutes, ordinances, regulations, customs and usage of the State of Utah and Salt Lake County.

87.  The Plaintiffs allege that the Defendants have a duty to protect and serve the public, including the Plaintiffs.  Deputy Broos was not on duty and out of her jurisdiction.

88.  The Plaintiffs allege that the Defendants had a duty not to stop or detain Mr. Alusa unless and until Mr. Alusa had committed an offense or unless there was probable cause to stop and detain Mr. Alusa.

89.  The Plaintiffs allege that the Defendants did not have probable or reasonable cause to stop and detail Mr. Alusa, and did not inform Mr. Alusa that he was being stopped and detained or arrested for any particular reason.  Mr. Alusa has a First Amendment right to talk and express his opinion.

90.  The Plaintiffs allege that without warning and without proper cause, the Defendants, including Deputy Broos, tasered Mr. Alusa for a substantial period of time, including four (4) tasering events, which led to the serious injury to Mr. Alusa, rendering him unconscious, all done while acting under the course and scope of her employment and under the color of State law.  Deputy Broos followed policies, procedure, and customs, and acted in a manner that directly resulted in the objectively unreasonable

16

detainment and seizure of Mr. Alusa, and the objective and unreasonable seizure and use of excessive force against Mr. Alusa, resulting in his injuries.

91.  The Plaintiffs allege that the Defendants had an obligation to intervene and properly supervise, train, discipline and control Deputy Broos, and tell her to stand down until the Midvale City Police Department could arrive to address the situation, since Deputy  was off duty and out of her jurisdiction.

92.  The Plaintiffs allege that the Defendants had an affirmative duty to intercede on behalf of Mr. Alusa to protect his constitutional rights.

93.  The Plaintiffs allege that the Defendants failed to intervene and prevent the deprivation of Mr. Alusa's constitutional rights, and to prevent injury to Mr. Alusa.

94.  The Plaintiffs allege that the Defendants acted within the course and scope of their employment and under the color of State law, and acted with objective unreasonableness and deliberate and unreasonable conduct in effectuating an unreasonable detention and use of excessive force creating a serious known risk of physical trauma by repeatedly tasering Mr. Alusa, in violation of clearly established law, of which a reasonable police officer should have known.

95.  The Plaintiffs allege that as a result of the acts and omissions of the Defendants, Mr. Alusa was deprived of his rights, privileges and immunities secured by the First, Fourth and Fourteenth Amendments of the United States Constitution and the Utah State Constitution.

96.   The Plaintiffs allege that as a direct and proximate result of the acts and omissions of the Defendants, the Defendants are liable for damages to the Plaintiffs for deprivation of his civil rights under 42 U.S.C. § 1983.

## VIII.

## FOURTH CLAIM FOR RELIEF

NEGLIGENCE OF  SALT LAKE COUNTY; SALT LAKE COUNTY SHERIFF, JAMES M. WINDER; SALT LAKE COUNTY SHERIFF'S OFFICE/UNIFIED POLICE DEPARTMENT; SALT LAKE COUNTY DEPUTY SHERIFF, TIANA BROOS; AND JOHN DOES II-X.

97.   The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 96 above.

98.   The Plaintiffs allege that the Defendants listed above had a duty of reasonable care to the Plaintiffs, including, but not limited to, the duty to properly hire, supervise, train, discipline and control law enforcement officers under their control, including Deputy Broos.

99.   The Plaintiffs allege that the Defendants listed above had a continuing duty to monitor and evaluate the performance of law enforcement officers under their control, and take all actions necessary to ensure that the members of the public, including the Plaintiffs, are not harmed by unlawful or negligent acts or omissions of law enforcement officers under their control, including Deputy Broos.

100.  The Plaintiffs allege that the Defendants listed above knew or should have known through actual or constructive knowledge that Deputy Broos posed a danger to the health and safety of members of the public, including the Plaintiffs and those similarly situated.

101.  The Plaintiffs allege that the resulting damages to Mr. Alusa were the direct and proximate result of the negligent acts or omissions of the Defendants set forth herein above under the following particulars:

a.  Negligently hiring Deputy Broos and John Does II-X;

b.  Negligently training Deputy Broos and John Does II-X;

c.  Negligently supervising Deputy Broos and John Does II-X;

d.  Negligently disciplining Deputy Broos  and John Does II-X;

e.  Negligently retaining Deputy Broos and John Does II-X;

f.  Negligently failing to institute policies, procedures and/or customs in the proper procedures in stopping, detaining and/or use of excessive force, which would have prevented Mr. Alusa's injuries; and

g.  Negligently failing to institute policies, procedures and/or customs, which resulted in the improper stopping, detaining and use of unreasonable and excessive force, which would have prevented Mr. Alusa's injuries.

102.  The Plaintiffs allege that the negligent acts, omissions and wrongful conduct committed by the Defendants listed above, Defendants Salt Lake County, Salt Lake County Sheriff's Office, and James Winder are vicariously liable for the negligent acts and omissions of Deputy Broos  and John Does 2-10, which were committed during the course and scope of their employment for Salt Lake County and the Salt Lake County Sheriff's Office/Unified Police Department (hereinafter "UPD").

**IX.**

**FIFTH CLAIM FOR RELIEF**

NEGLIGENCE OF SALT LAKE COUNTY SHERIFF, JAMES M. WINDER; SALT LAKE COUNTY DEPUTY SHERIFF, TIANA BROOS ; AND JOHN DOES 2-10.

103.  The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 102 above.

104.  The Plaintiffs allege that the wrongful acts, omissions and improper conduct of Deputy Broos were committed in the course and scope of her employment with Salt Lake County, Salt Lake County Sheriff's Office, and the UPD.

105.  The Plaintiffs allege that Deputy Broos owed a duty of reasonable care to Mr. Alusa, which was breached, including, but not limited to, a duty to protect and serve Mr. Alusa and others similarly situated.

106.  The Plaintiffs allege that Deputy Broos engaged in negligent acts, omissions, and wrongful conduct as set forth below:

    a.  Improperly and illegally attempting to stop Mr. Alusa;

    b.  Improperly and illegally detaining Mr. Alusa;

    c.  Failing to have any reasonable or probable cause to stop or detain Mr. Alusa;

    d.  Using unreasonable force, including, but not limited to, excessive and potentially deadly force;

    e.  Improperly contacting Mr. Alusa, including, but not limited to, assault or battery of Mr. Alusa's person;

    f.  Unreasonably seizing and/or attempting to restrain Mr. Alusa;

    g.  Improper performance of her duties as a law enforcement officer;

    h.  Negligent infliction of emotional stress and/or harm;

    i.  Improperly and unreasonably tasering Mr. Alusa on multiple occasions, at the same time attempting to give instructions when the tasering episode prevented Mr. Alusa from being in possession of his physical or mental capacities to respond to any commands given by Deputy Broos;

    j.  Failing to be properly trained, supervised or understand how to properly use the taser;

21

k.  Failing to maintain possession of her mental and physical capacity to objectively observe the situation and to control her reaction to not overly taser Mr. Alusa for a substantial period of time until he was unconscious;

l.  Failing to allow Midvale City Police Department to investigate and handle the situation;

m.  Attempting to escalate an event, which was not criminal, to the point where Mr. Alusa was unconscious and in need of medical care, and otherwise violating Mr. Alusa's State and Constitutional rights provided under the First, Fourth and Fourteenth Amendments, and Title 42 U.S.C. § 1983;

n.  Engaging in conduct when it was unreasonable to do so, using excessive force in the making of an unreasonable seizure, and not making a lawful arrest;

o.  The Plaintiffs allege that Deputy Broos did not give any commands or have any grounds to make a stop, detention or arrest.  Plaintiffs allege Deputy Broos tasered Mr. Alusa because he exercised his First Amendment rights; and

p.  The Plaintiffs allege that Deputy Broos never stated that Mr. Alusa was under arrest, and had no basis for using unreasonable excessive force

22

by tasering Mr. Alusa four (4) different times for substantial periods of time.

107.  The Plaintiffs allege that Deputy Broos did not act reasonable, did not act prudent, and had no objective reason or basis or jurisdiction to be involved in tasering Mr. Alusa with the Taser X26, manufactured by Taser International, Inc.

108.  The Plaintiffs allege that Deputy Broos used objective unreasonable excessive force and poor objective reasoning, and did not follow the laws, rules, regulations, warnings, or the proper operation of the Taser X26.

109.  The Plaintiffs allege that Deputy Broos was not familiar with, did not understand and had not read the warnings or procedures in discharging the Taser X26, and violated all of the warnings, procedures and policies set forth by Taser International, Inc., and by the Defendants.

110.  The Plaintiffs allege that Deputy Broos attempted to cover up and manipulate the facts and exaggerate facts in her police report in an effort to give justification for her involvement when said facts did not exist and witnesses continually told Deputy Broos that Mr. Alusa had not done anything to warrant her to continually taser Mr. Alusa until he was unconscious.

111.  The Plaintiffs allege that Deputy Broos was constantly told that Mr. Alusa had a heart condition and could not respond to her commands while she continually tasered Mr. Alusa until he was unconscious.

112.  The Plaintiffs allege that Deputy  was not in her jurisdiction, and did not see any crime being committed by Mr. Alusa warranting her to stop, detain or otherwise taser Mr. Alusa.

113.  The Plaintiffs allege that Mr. Alusa was walking away, going for a walk after he returned from his apartment.

114.  The Plaintiffs allege that Deputy Broos did not tell Mr. Alusa or any of the witnesses in the area that Mr. Alusa was under arrest.

115.  The Plaintiffs allege that Deputy Broos should have and could have removed herself from the situation and allowed the Midvale City Police Department to come and investigate, and take over, since it was Midvale's jurisdiction.

116.  The Plaintiffs allege that Deputy Broos attempted to contact the witnesses to extract information to coincide with her version as to what she had put in her report to justify her unreasonable and unobjective use of unreasonable, excessive force in discharging the taser for substantial periods of time for four (4) different events until Mr. Alusa was unconscious.

117.  Deputy Broos, Salt Lake County, and the Salt Lake County Sheriff's Office lacked a strong governmental interest in having Deputy Broos walk her dog in Midvale with her boyfriend and then tasering Mr. Alusa four times.

118.  Deputy Broos Conduct was not objectively reasonable under the First, Fourth and Fourteenth Amendments.  Deputy Broos could have chose to continuing

walking her dog and Mr. Alusa would have continued on his walk.  The Defendants did not have a strong governmental interest in preventing Mr. Alusa from continuing his walk.

## X.

### SIXTH CLAIM FOR RELIEF

INTENTIONAL, WILFUL, WANTON, UNLAWFUL ACTS OF
THE PROPOSED DEFENDANTS AND JOHN DOES 2-10.

119.  The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 118 above.

120. The Plaintiffs allege that the Defendants and John Does II-X wrongful acts, omissions and improper conduct were committed within the course and scope of their employment with the Defendants.

121.  Mr. Alusa did not pose an immediate threat to Deputy Broos or the other Defendants.  Mr. Alusa went to his apartment.  Some time later he emerged from his apartment and went or a walk in a direction directly opposite of Deputy Broos.

122.  Deputy Broos tased Mr. Alusa in the back without notice, warning, or provocation.  Deputy Broos continually tasered Mr. Alusa in violation of the manufacturer's instructions.

123.  Deputy Broos knew or should have known, while tasering Mr. Alusa, the electrical impulse overrides Mr. Alusa's central nervous system, paralyzing the muscles, rendering him helpless, and unable to follow subsequent commands.

124. The Plaintiffs allege that the Mr. Alusa's injuries were the direct and proximate result of the Defendants' intentional, wilful, wanton, reckless acts and omissions, including, but not limited to, the following:

    a.  Intentional, wilful, wanton, outrageous and reckless tasering of Mr. Alusa;

    b.  Intentional, wilful, wanton, outrageous and reckless use of the Taser X26, including the wrongful discharge of the Taser X26 by  Deputy Broos;

    c.  Intentional, wilful, wanton, outrageous and reckless use of unreasonable force, including, but not limited to, excessive and potentially deadly force by tasering Mr. Alusa for substantial periods of time over four (4) different events until he was unconscious;

    d.  Intentional, wilful, wanton, outrageous and reckless contact with Mr. Alusa, including, but not limited to, assault and battery by tasering Mr. Alusa for substantial periods of time over four (4) different events until he was unconscious;

e.   Intentional, wilful, wanton, outrageous and reckless seizure and/or restraint of Mr. Alusa, as Mr. Alusa was walking;

f.   Intentional, wilful, wanton, outrageous and reckless unlawful performance of duties as a law enforcement officer;

g.   Intentional, wilful, wanton, outrageous and reckless infliction of emotional distress and/or harm; and

h.   The Plaintiffs allege that as a direct and proximate result of the wrongful acts and omissions alleged herein, Mr. Alusa was injured and suffered damages as set forth herein.

## XI.

## <u>SEVENTH CLAIM FOR RELIEF</u>

ATTORNEY FEES AND PUNITIVE DAMAGES.

125.  The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 124 above.

126.  The Plaintiffs allege that as a result of the Defendants' wrongful acts, omissions, and improper conduct, the Plaintiffs are entitled to attorney fees pursuant to Title 42 U.S.C. § 1998, for the violations covered by the act.

127.  The Plaintiffs also allege that they are entitled to punitive damages for the intentional, willful, wanton, outrageous, reckless and gross negligent conduct of the

Defendants for the reckless indifferent and wanton disregard for the law and the lives and safety of others, including Mr. Alusa.

128**.**  The Plaintiffs allege that punitive damages are warranted based on the conduct of the Defendants described above.

**XII.**

**<u>EIGHTH CLAIM FOR RELIEF</u>**

TASER INTERNATIONAL

129.  Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 128 above.

130.  Plaintiffs allege Defendant Taser International, is negligent in, among other things, the following particulars;

a.  Failing to properly warn the other Defendants herein of the significant danger of multiple taser shots to one individual in a short duration;

b.  Failing to place automatic safety locks on their taser gun so that out of control and emotional officers are prohibited from using a taser gun to taser individuals for lengthy periods of time and using their taser gun to shock an individual multiple times;

c.  Failed to warn the Defendants that the taser gun has been outlawed in approximately 13 states;

28

    d.  Failing to place a block on the taser gun to stop the gun from tasering an individual after a duration of 10 seconds;

    e.  Failing to set up training sessions to properly instruct, train, and supervise law enforcement personnel including defendants Salt Lake County and its employees, Salt Lake County Sheriff's Office/UPA, Sheriff James Winder, and Deputy Broos in the proper use of the Taser X26.

131.  Plaintiffs allege on information believed that Taser International knew or should have known that the Taser X26 is capable of causing harmful effects to individuals who were tasered for lengthy periods of time and tasered multiple times in a single event.

132.  Plaintiffs allege that Defendant Taser International failed to install an automatic switch to prevent Deputy Broos from Tasering Mr. Alusa for lengthy periods of time and tasering him for five consecutive shots in a single event causing serious injury to Mr. Alusa.

133.  The Plaintiffs allege on information and belief that Defendant Taser International knew or should have known that some law enforcement personnel do not have the proper decorum, mental aptitude, or the emotional discipline to safely and accurately operate the Taser X26.  Plaintiffs allege that Taser international did not set forth any type of testing for the other Defendants herein, including Deputy Broos, to

29

make sure she was properly trained, supervised, and instructed and given a psychological test to establish that she could safely and correctly operate the Taser X26 in a manner not to use unreasonable excessive force against the Plaintiff, Mr. Alusa.

134.  Plaintiffs allege on information and belief that Taser international failed to properly instruct, train, and supervise Deputy Broos in discontinuing use of the Taser X26 after she was informed by Plaintiff Katie Alusa that Mr. Alusa had a heart condition and other medical problems which may be impacted by lengthy and repeated  shots or discharge of the Taser X26.

135. Plaintiffs allege that the discharge of the Taser X26 by Deputy Broos on April 18, 2009 against Mr. Alusa exceeded all manufacturer specifications, safety policies and procedures, training, supervision, and instruction, by Deputy Broos who was completely out of control in discharging the Taser x26 upon Mr. Alusa five separate times in a single event with durations on the first shot of 50 seconds; on the second shot 51 seconds; on the third shot 17 seconds; on the fourth shot 4 seconds; on the fifth shot 2 seconds.

136. Plaintiffs allege that Taser International failed to properly train, supervise, and instruct Deputy Broos and the other Defendants herein that while discharging the Taser X26, Mr. Alusa would not be able to respond to commands while he is having the voltage travel through his body.

30

**XIII.**

**NINTH CLAIM OF RELIEF**

TASER INTERNATIONAL PRODUCTS LIABILITY FAILURE TO WARN

137.  The Plaintiff's reallege and incorporate herein by reference paragraphs1 through 136 above.

138.  The Plaintiffs allege that the Defendant Taser International knew or should have known that the Taser X26 was, among other things, negligently manufactured, designed, assembled, defective, or altered and not in good repair to be used on April 18, 2009.

139.  On information and belief, the Plaintiff alleges that Defendant Taser International was negligent in failing to warn the intended users, including the other Defendants herein and Plaintiff, of the unreasonable risk of hazards, particularly those associated with using the Taser X26 to taser Mr. Alusa more than once on April 18, 2009.

140.  By reason of the failure on the part of the Defendant Taser International to warn the other Defendants herein and the Plaintiff of the risks, hazards, and consequences associated with the use of the Taser X26, Mr. Alusa was seriously injured.

31

**XIV.**

**TENTH CAUSE OF ACTION**

TASER INTERNATIONAL STRICT LIABILITY

141.  Plaintiffs reallege and incorporate herein by reference paragraphs 1 though 140 above.

142.  Taser International negligently manufactured, designed, assembled, and/or altered the Taser X26 in a defective condition which was unreasonably dangerous to the user and to that person tased or otherwise in close proximity such that it was most likely to cause harm or damage.

143.  As a direct and proximate result of the defective condition of the Taser X26, used on April 18, 2009, Mr. Alusa sustained serious injuries.

144.  The Plaintiffs allege that the Defendant Taser International is strictly liable for the damages and injuries sustained by the Plaintiffs pursuant to Section 402 of the second Restatement of Torts.

**XV.**

**ELEVENTH CAUSE OF ACTION**

TASER INTERNATIONAL BREACH OF EXPRESS WARRANTIES

145.  The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 144 above.

146.  On information believed, the Plaintiffs allege that Taser International negligently manufactured, designed, assembled, and altered the Taser X26 and expressly warranted the Taser X26 to be safe for the Defendants' use and discharge on Mr. Alusa.

147.  On information believed, the Plaintiffs allege that Defendant Taser International is a merchant with respect to the sale, manufacture, design, assembly, alteration and installation of the Taser X26.

148. Plaintiffs allege that the Defendant Taser International, expressly warranted the Taser X26 would perform without cause and injury to Mr. Alusa.

149.  At the time of making the aforesaid warranty, Defendant Taser International, had knowledge of the purpose for which said product was to be used and warranted the same to be in all respects, fit, safe, effective, and proper for such purpose.

150.  The Defendants recently relied upon the skill and the judgment of said Defendant Taser International and upon said express warranties in using the aforesaid Taser X26.  Said warranties and representations were untrue in that the product caused serious injury to Mr. Alusa, was unsafe, therefore unfit for the use for which it was intended, and did, thereby, approximately cause Mr. Alusa to sustain damage and injuries alleged herein below.  The Plaintiffs allege Taser International violated Utah Code Ann. § 70A-2-313.

151.  On information believed, the Plaintiffs allege that the Defendant Taser International knew the ultra hazardous condition of the Taser X26 and willfully and intentionally failed to take any steps to correct the ultra hazardous condition for numerous years prior to Plaintiffs' injury on April 18, 2009.

**XVI.**

**TWELFTH CAUSE OF ACTION**

TASER INTERNATIONAL BREACH OF IMPLIED
WARRANTY OF FITNESS

152.  The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 151 above.

153.  The Plaintiff alleges that Defendant Taser International implied the Taser X26 was fit for the purpose for which it was designed and that it was a safe and suitable product to be used in detaining potential suspects without injury, pursuant to Utah Code Annotated § 78-2-315.

154.  On information and belief, the Plaintiff alleges that the Taser X26 was not fit for the intent and purpose; rather, it was unfit, unsafe, unsuitable for the purpose of which it was intended.  Such condition of the Taser X26 constituted breach of the Defendant Taser International's implied warranty of fitness, which breach directly and proximately caused the Plaintiffs injuries and damages.

34

**XVII.**

**THIRTEENTH CAUSE OF ACTION**

TASER INTERNATIONAL BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY

155.  The Plaintiffs reallege and incorporate herein by reference paragraphs 1
through 154 above.

156.  The Plaintiffs allege that Taser International warranted the Taser X26,
was among other things of merchantable quality, fit, safe, and in proper condition for
the ordinary use that the Taser X26 is designed and used.

157.  The Plaintiff further alleges that the Taser X26 used by the other
Defendants including Salt Lake County, Salt Lake County Sheriff's Office, and Deputy
Broos, was not of measurable quality; rather, it was unsafe and unusable for the
purpose for which it was intended.  The condition of the Taser X26 constituted breach
of Defendant Taser International's implied warranty of merchantability, which breached
directly and proximately caused Plaintiff's injuries.  The Defendant Taser International
failed to comply with Utah Code Annotated § 70A-2-314.

**XVIII.**

**FOURTEENTH CAUSE OF ACTION**

TASER INTERNATIONAL NEGLIGENT MISREPRESENTATION

158.  The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 157 above.

159.   On information and belief, Plaintiffs allege that the Defendant Taser International, falsely and negligently represented to the other Defendants that the aforesaid product, Taser X26, was safe.

160.  The Plaintiffs allege on information and belief that such representations made by Taser International were, in fact, false.  The true facts are that the Taser X26 was not safe for the said purpose and was, in fact, dangerous to the health and body of Mr. Alusa and others.

161.  The Plaintiffs allege on information and belief that the Defendant Taser International, made the aforesaid representations without reasonable grounds for believing them to be true.  The Defendant Taser International did not have accurate information nor did it conduct any adequate inspection concerning the aforesaid representations and inspections of the Taser X26.  In fact, the Defendant Taser International knew the product was unsafe due to the similar injury occurring to others throughout the United States.

162.  On April 18, 2009, the other Defendants herein, were not informed of the misrepresentations and conditions of the Taser X26.  Neither were the Plaintiffs.  The other Defendants herein, relied upon Taser International's representations that the Taser X26 was, in fact, fit for the intended purpose.

163.  As a direct and prompt result of the Defendant Taser International's negligent misrepresentations of the safety of the Taser X26, the Plaintiffs have been damaged in the amount as set forth herein below.

## XIX.

### FIFTEENTH CAUSE OF ACTION

TASER INTERNATIONAL VIOLATION OF LAW

164.  The Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 163 above.

165.  Plaintiffs allege that Defendant Taser International had an obligation not to violate the law in the manufacture, design, formulation, testing, assembly, inspection, research, distribution, marketing, labeling, packaging and preparation for use, sale and warning of the Taser X26.

166.  Plaintiffs allege that on information and belief that Taser International failed to meet the standard of care set by Statute and Regulations both Federal and State regarding the safe operation in the use of the Taser X26.

167.  The Plaintiffs allege that the Defendant Taser International failed to properly warn, train, supervise, and instruct the other Defendants herein in the safe operation of the Taser X26.

168.  The Plaintiffs allege on information and belief that Taser International failed to manufacture and design the Taser X26 with safety locks and a block to prevent unlawful use of the Taser X26 on a single individual in a single event to prevent harm and injury to those being tasered, including Mr. Alusa.

169.  The Plaintiffs allege on information and belief that Taser International knew or should have known of all the injuries sustained by those tasered throughout the United States by the discharge of its Taser X26.  Plaintiffs further allege that Defendant Taser International knew or should have known that the Taser X26 has been outlawed in thirteen states.  Plaintiffs allege that Taser International failed to take steps to correct the dangerous and hazardous design of the Taser X26 and recall the Taser X26; instruct those in possession of the Taser X26 not to use the Taser X26; and failed to supplement its warnings to prevent harm from those being tased by the Taser X26 including Mr. Alusa.

**XX.**

**SIXTEENTH CAUSE OF ACTION**

**DAMAGES**

170.  Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 169 above.

171. Plaintiffs allege that as a direct and proximate result of the wrongful acts, omissions, and improper conduct of the Defendants, Mr. Alusa has sustained injury to his head, face, back, hands, and was rendered unconscious as a result of being tasered for a substantial period of time, over five different events, to the point where he was rendered unconscious and in need of medical care.  Mr. Alusa was transported by ambulance to Intermountain Medical Center.

172.  As a direct and proximate result of the Defendants' wrongful acts, omissions, and improper conduct, Mr. Alusa has undergone treatment and incurred medical expenses in the amount of not less than $32,547.17.

173.  As a further direct and proximate result of the Defendants' negligent acts, omissions, and wrongful conduct, as set forth herein above, Mr. Alusa has suffered past, present, future, special damages including medical bills, lost wages, out of pocket expenses, impaired earning capacity, and consequential damages in an amount to be established at trial.

174.  As a further direct and proximate result of Defendants' negligent acts, omissions, and improper conduct, Ms. Alusa has sustained past, present, future general damages, including emotional pain and suffering, physical pain and suffering, loss of enjoyment of life, permanent impairment/disability, potential permanent scarring, increased likelihood of re-injury or re-aggravation in an amount to be established at trial.

175.  As a further direct and proximate result of Defendants' negligent acts, omissions, and wrongful conduct, Plaintiff Katie Alusa asserts a claim for negligent infliction of emotional distress. Given the fact that she was in the zone of danger she could have been injured by Deputy Broos' conduct, in and amount to be established at trial.  Plaintiff Katie Alusa also asserts a claim for damages for loss of consortium pursuant to Utah Code Ann. §30-2-11.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.  For damages for violation of Plaintiffs Constitutional Rights under §42 U.S.C. 1983, Fourth, Fifth, Fourteenth Amendments to the United States Constitution and the State of Utah Constitution.

2.  For past, present and future special damages, including medical expenses, lost wages, impaired earning capacity, out of pocket expense and consequential damages in an amount to be established at trial;

3.  For past, present, and future general damages including physical pain and suffering, emotional pain and suffering, loss of enjoyment of life, permanent

40

impairment/disability, permanent scaring and increased likelihood of reinjury or aggravation in an amount to be established at trial;

4.  For punitive damages in an amount not less than $250,000.00;

5.  For attorney fees and costs pursuant to 42 U.S. §1988.

6.  For prejudgement and post-judgment costs of court, and such other relief as the court deems equitable.

## JURY DEMAND

Pursuant to Rule 38 of the <u>Utah Rules of Civil Procedure</u>, Plaintiffs demand a trial by jury of all issues triable by jury, and submit herewith said statutory fee.

RESPECTFULLY SUBMITTED this 17th day of February, 2011.

ROBERT J. DEBRY & ASSOCIATES


s/ GEORGE T. WADDOUPS
Attorney for Plaintiffs


**PLAINTIFFS' ADDRESS:**

683 West Saratoga Chase Drive
Saratoga Springs, UT 84045