George T. Waddoups, #3965
Riley T. Waddoups, #12267
Geri C. Kelley, #8800
ROBERT J. DEBRY & ASSOCIATES
4252 South 700 East
Salt Lake City, UT 84107
Telephone: (801) 262-8915
gwaddoups@robertdebry.com
rwaddoups@robertdebry.com

Attorneys for Plaintiffs

_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LIUFAU ALUSA and KATIE ALUSA<br><br>    Plaintiffs,<br>vs.<br><br>SALT LAKE COUNTY, UTAH; SALT LAKE COUNTY SHERIFF JAMES M. WINDER, individually and in his official capacity; SALT LAKE COUNTY DEPUTY SHERIFF TIANA BROOS, individually and in her official capacity, TASER INTERNATIONAL, INC. an Arizona Corporation, JOHN DOES II-X, and RELATED SUBCONTRACTORS, individually and in their official capacity.<br><br>    Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE FOR DAVID DODDRIDGE**<br><br><br><br><br><br><br><br><br><br>Case No. 2:11-cv-00184-CW<br><br>Judge Robert Shelby |

Plaintiffs, by and through counsel, hereby respectfully submit PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE FOR DAVID DODDRIDGE.

## STATEMENT OF FACTS

1. Mr. Wallantine testified that Defendant Broos, as an officer, should know the guidelines for a firearm. See deposition of Kenneth Wallantine attached hereto as Exhibit 1, pg. 51, lines 19-21.

2. Mr. Wallantine testified that Defendant Broos should be familiar with the Use of Force Policy if she is at work in the field. Id. at pg. 54, lines 1-12.

3. Mr. Wallantine testified that Brody Mitchell and Defendant Broos had some issues following the rules at the apartment complex that, if known to him, he would need to address with Defendant Broos as the police chief. Id. at pg. 65, lines 21-25; pg. 66, lines 1-3.

4. Mr. Wallantine acknowledges that disputed facts exist surrounding the incident which occurred on April 18, 2009. Id.

5. Mr. Wallantine agrees that Tiana Broos and Brody Mitchell may have a tendency not to tell the truth one hundred percent of the time. Id. at pg. 120, lines 6-15.

6. Defendant Broos is responsible for spark testing her taser every day before she goes on duty. Id. at 80, lines 16-21.

7. Defendant Broos does not always do the required spark test at the beginning of her shift. See deposition of Deputy Broos attached hereto as Exhibit 2, pg. 16-19.

8. Defendant Broos reviewed the Use of Force policy prior to her deposition to refresh her memory. Id. at pg. 57, lines 15-19.

9. Defendant Broos did not instruct her boyfriend, Brody Mitchel, to stay inside the apartment as she went outside to investigate on the night of the incident. Id. at pg. 130, lines 13-25.

10. At her deposition, defendant Broos did not know what the county's domestic policy was. Id. at pg. 149, lines 1-6.

11. Defendant Broos was not able to articulate what elements are necessary to constitute an assault. Id. at pg. 155, lines 1-18.

12. Defendant Broos did not know where Brody Mitchell was standing while she was charging Mr. Alusa with the taser. Id. at pg. 176, lines 6-21.

13. Defendant Broos did not know the police department guidelines as to the action an officer should take during the tasing cycle. Id. at pg. 177, lines 10-19.

14. Defendant Broos did not know how close Mr. Alusa was to Brody Mitchell before she tased him. Id. at pg. 177, lines 23-25; pg. 178, lines 1-5.

15. Defendant Broos does not know how long Mr. Alusa was going toward Brody Mitchell before she deployed her taser on him. Id. at pg. 180, lines 7-14.

16. Defendant Broos learned, while deploying her taser on Mr. Alusa, that he had a heart condition from Katie Alusa. Id. at pg. 186, lines 7-23.

17. Defendant Broos testified that Brody Mitchell could have been back in the apartment while she was deploying her taser on Mr. Alusa. She simply did not know where Brody Mitchell was located. Id. at pg. 189, lines 16-25.

18. Defendant Broos does not know if the police department has a policy about violating constitutional rights for search and seizure. Id. at pg. 203, lines 9-12.

19. Defendant Broos believes the police department's Use of Force policy is that an officer can use whatever force is reasonably necessary to affect the arrest or protect themselves or others. Id. at pg. 204, lines 6-11.

20. Expert David Doddridge reviewed the following Salt Lake County Sheriff's Department reports:

    a. Correspondence;

    b. Salt Lake County Privilege Log;

    c. Keith Larson's report;

    d. Deputy Warwick's report;

    e. Operations Manual on Domestic Violence;

    f. Attorney Gill's responses to question to a questionnaire;

    g. Salt Lake County incident report;

    h. Salt Lake County general offense, including defendant Broos' original statement; and

      i. Deputy Guy Dodge's supplemental narrative.

21. Expert Doddridge reviewed the following documents from Taser International:

    a. Bullets and 14.0.03 Law Enforcement Training Manual; and

    b. Date and Time Logs for defendant Broos' taser.

22. Expert Doddridge reviewed the following litigation documents:

    a. Answers to Interrogatories by defendant Broos;

    b. Depositions of Tiana Broos, Dixie Suter, Lieutenant John Barker, Marty Glover, Michael Brave, Deputy Warwick, Deputy Peatross, Keith Larson, Liafua Alusa, and Katie Alusa; and

    c. Deputy Broos' training files and exam results.

23. Expert Doddridge reviewed the following miscellaneous documents:

    a. ACL report: "Tasers No Longer a Non-lethal Full Alternative to Law Enforcement";

    b. Vacate notice of 4-20-2009;

    c. Incident report dated 4-20-1009; and

    d. EMS Midvale billing statement. See David Doddridge's report dated September 26, 2012 attached hereto as Exhibit 3.

24. David Doddridge has experience as a private investigator, registered by the State of Utah, and a former officer of the Los Angeles Police Department. See David Doddridge's curriculum vitae attached hereto as Exhibit 4.

25. Mr. Doddridge has testified as an expert in numerous other Utah cases. Id.

**STANDARD**

Federal Rules of Evidence 702 governs the admissibility of expert testimony. Daubert v. Merrell Dow Pharms, Inc., 509 U.S. 579 (1993). A witness must be qualified as an expert in order to give opinion testimony. Fed. R. Evid. 702. Pursuant to the Federal Rules of Evidence, Rules 104 and 702, preliminary concerns regarding the qualifications of an expert should be established by a preponderance of proof. Id. at ¶ 2.

Expert testimony must be relevant and reliable. Fed. R. Evid. 702. The Rule 702 inquiry into expert testimony is a liberal one. Daubert, 509 U.S. at ¶ 33.

**ARGUMENT**

Mr. Doddridge is qualified to give expert testimony in this case. He has extensive experience and knowledge in this particular field. His opinions and conclusions are based on such expertise, reliable facts and data pertaining to this case and are relevant to the issues in this case.

Mr. Doddridge's expertise stems from his professional career, experience, education, and knowledge, and his opinions and conclusions are a reflection of such expertise. The mere fact that Mr. Doddridge spent much of his career as a Los Angeles Police Department officer rather than a Utah Officer does not render his experience

inadequate, nor does it make him less qualified as an expert. See McMullin v. United States, 515 F.Supp.2d 909, 912 (2007).

## POINT I

### MR. DODDRIDGE IS QUALIFIED AS AN EXPERT UNDER RULE 702 OF THE FEDERAL RULES OF EVIDENCE.

A witness is qualified as an expert if the individual possesses knowledge from gained practical experience.[1] United States v. Cotton, 22 F.3d 182, ¶5 (1994). Although a witness must be qualified as an expert before giving opinion testimony, the "court should not be unduly restrictive in ruling upon the qualifications of experts…" Holmgren v. Massey-Ferguson, Inc., 394 F.Supp. 910, ¶5 (1974). The standard for qualifying an individual as an expert should be construed in a liberal and flexible sense; not requiring the expert to overcome a stringent test of his own qualifications. Gardner v. General Motors Corp., 507 F.2d 525, 528 (10th Cir. 1974). The bar must not be set so high so as to exclude the only kind of testimony that is ordinarily obtainable and necessary for a specific case. Geroge v. Morgan Const. Co., 389 F.Supp. 253, ¶3 (1975). Practical experience or academic training does provide the basis for qualifying an individual as an expert. Holmgren, 394 F.Supp. at ¶6.

Relevant indicia used to determine whether a particular person is qualified as an expert in any particular case is: 1) whether the subject matter of the case is closely related to the individuals particular profession, business, or science, 2) not within

---

[1] "Application of the four factors set out in Daubert is unwarranted in cases where expert testimony is based solely on experience or training." Compton v. Subaru of America, Inc., 82 F.3d 1513, 1518 (10th Cir.1996).

7

the common knowledge of an average person, 3) whether the person has skill, experience, or knowledge in his particular field to make it appear as though his opinion rests on reliable and substantial foundation.  4) whether the witnesses opinion would assist the jury with the particular issues of the case, 5) whether the expert generated and signed a report expressing his opinions in the particular case, 6) whether the expert is a senior person at his particular company or firm, 7) whether the expert is certified in his particular field, 8) whether the expert furnishes the court with a resume, 9) whether the expert has been asked to testify either by deposition or trial in the past, 10) whether the expert has published any books or articles, 11) and whether the expert has previously done work in his field.  First Savings Bank, F.S.B. v. US Bancorp, 117 F.Supp.2d 1078, ¶ 12 – 13 (2000).

A qualified expert need not be specialized in every area he renders an opinion.  Wheeler v. John Deer Co., 935 F.2d 1090, 1100 (10th Cir.1991).  An expert's lack of specialization in one area does not affect the admissibility of the opinion, only its weight.  Id.  An expert that does not specialize in a particular field does not bar him from providing an opinion in a non-specialized area as long as the area in which he is providing opinion is commonly thought to be indigenous to his over-all field of expertise. Holmgren, 394 F.Supp. at ¶4.

When Mr. Doddridge's vast experience and knowledge is analyzed by the above criteria, it appears he is a well-established expert in his field.  Mr. Doddridge spent over 20 years working as an officer and detective for the LAPD.  He is trained in

8

police procedures regarding use of force, pain compliance, and arrest.  Mr. Doddridge has taught classes on the detention and apprehension of mentally ill and drug and alcohol affected persons.  Mr. Doddridge specializes in, and has taught, apprehension techniques involving shooting situations and other highly volatile situations.

Prior to his time at the LAPD, Mr. Doddridge went through P.O.S.T. which teaches, among other things, Federal guidelines for use of force.  Every person, before becoming an officer, must complete P.O.S.T. or some other similar training.  Mr. Doddridge went through the same P.O.S.T. that defendant Broos completed prior to being hired on as a deputy.

Mr. Doddridge spent time all over the world as an expert in the capacity of travel safety for high risk individuals.  His work in this field included identifying individuals under the influence of drugs, psychological defects, and those displaying threatening or belligerent behaviors.

For the last ten years, Mr. Doddridge has been licensed and worked in the State of Utah as private investigator.  Mr. Doddridge is a certified instructor in positive control systems, a course focused on obtaining compliance without using force.  Mr. Doddridge has had the opportunity of apprehending hundreds of belligerent juveniles throughout his time in Utah.  Mr. Doddridge has specialized training as a United States Army Military Police Officer which includes apprehending persons under the influences of drugs or alcohol.

Mr. Doddridge has extensive experience and has even taught classes for the FBI and LAPD regarding proper police tactics used when apprehending mentally disturbed suspects, including suspects with alcohol, dementia, and other disorders. Mr. Doddridge has been educated in positive control systems, and has served as an instructor to the crisis intervention program.

Mr. Doddridge has researched tasers through personal study. He also reviewed the training documents produced by Taser International. The training information supplied by Taser International is sent to police agencies all over the country when the agency purchases the taser for its officers to carry. The training material supplied by Taser International is the same for every state. Therefore, every agency all over the country that uses the taser is trained with the very same training manual supplied by Taser International.

Mr. Doddridge has published his resume for the court's review. Mr. Doddridge has given expert testimony through deposition and trial testimony in a number of cases in Utah over the years. Mr. Doddridge has made public appearances on the radio and television as an expert in various areas. Particularly, Mr. Doddridge appeared on MSNBC news as an expert regarding police tactics and force.

## POINT A.

## MR. DODDRIDGE DOES NOT HAVE TO BE A UTAH POLICE OFFICER TO BE QUALIFIED AS AN EXPERT IN A UTAH CASE.

An expert does not need to be licensed or actively working as an expert in the particular state in which he wishes to testify as an expert. Pember v. Carlson, 45 A.D.3d 1092, ¶2 (2007). If an individual is qualified as an expert pursuant to Rule 702, that individual can testify as an expert; to rule otherwise, the court would be putting a significant limitation on Rule 702. J.T. Baggerly v. CSX Transp., Inc., 370 S.C. 362, ¶15 (2006).

The defendants argue that because Mr. Doddridge was an officer in California instead of Utah that he is not qualified to give expert testimony in Utah. The defendants failed to acknowledge that Mr. Doddridge has worked for the past ten years in Utah. Mr. Doddridge has been qualified as an expert in numerous other Utah cases, giving expert and trial testimony. The mere fact that Mr. Doddridge was on the streets of California working as a police officer, apprehending individuals, and making judgment calls on a daily basis does not disqualify him as an expert in Utah. McMullin v. United States, 515 F.Supp. 2d 909, 912, (2007). He was doing the exact same thing in California as an officer that Utah police officers do.

Mr. Doddridge has vast experience and knowledge in police tactics and use of force. Not only has he been provided with Utah policies and procedures in this case, but Mr. Doddridge has been made aware of Utah policies and procedures through

11

his work and other cases he has been involved in and through personal study throughout his career.

To exclude out of state experts would be to limit the truth-seeking duty of the court. Some cases require out of state experts in order for one party to support their position. In state experts may refrain from providing testimony because it may negatively impact their relationship with such agencies or companies with which their testimony conflicts. It would be impossible for the plaintiff to get a Salt Lake County police officer to testify against their own agency. Nor is it likely to convince an officer from a different agency in Utah to testify against Salt Lake County Police Department.

The purpose of an expert is to assist the jury. If the court adopts a rule in which out of state experts cannot testify in Utah, Utah juries, including the jury in this case, will be denied the crucial aspect of expert testimony.

## POINT II

### THE OPINIONS OF MR. DODDRIDGE ARE SUFFICIENTLY BASED ON RELIABLE FACTS AND DATA

The expert may base his opinions or conclusions on the facts and data of the case that he either has firsthand knowledge of, or has been made aware of through other means. Fed. R. Evid. 703. Mr. Doddridge has reviewed all of the depositions that have been taken in this case. Mr. Doddridge has reviewed all of the documents that have been disclosed by all of the parties in this case. Mr. Doddridge has reviewed taser training manuals and has researched information about Tasers. Mr. Doddridge has

reviewed, and is previously familiar with, Salt Lake County's policies on use of force and other police tactics. The underlying facts and data of this case is the basis for Mr. Doddridge's opinions and conclusions he has rendered in this case. Also, this is the exact type of fact gathering methodology that experts commonly use in the same field as Mr. Doddridge.[2]

        Mr. Doddridge is able to form expert opinions and conclusions on the facts and data presented to him due to his lengthy career as a police officer. Mr. Doddridge also pulled knowledge and insight from his work as a private investigator licensed by the State of Utah. Specifically, Mr. Doddridge has specialized knowledge and understanding regarding police procedures involving use of force, pain compliance, and arrest. Mr. Doddrige uses his past experience and knowledge to generate his opinions and conclusions in this case, just as any other expert would do in a similar field. Thus, Mr. Doddridge's opinions and conclusions are based on reliable facts and data specific to this particular case.

        Defendants accuse Mr. Doddridge of having a negative outlook toward female officers. This simply is not true. Mr. Doddridge spoke of his experience as female officers were first integrated into the police force. This does not constitute a bias toward female officers as the defendants impliedly suggest.

---

[2] The defendant's experts, Mr. Wallentine and Mr. Roberts, base their expert opinions and conclusions on the exact same information that Mr. Doddridge used to form his expert opinions and conclusions. However, it does appear through deposition that Mr. Wallentine and Mr. Roberts were not furnished with all of the depositions that have been taken in this case.

The defendants also attack Mr. Doddridge for some personal views; views that are in no way relevant to the subject matter of this case.[3] This is simply an attempt to move the focus off of Mr. Doddridge's qualifications and experience. Mr. Doddridge's personal views on irrelevant topics no way inhibit his ability to base his opinions on reliable facts and data or disqualify him as an expert on the relevant issues in this case.[4]

## POINT III

## MR. DODDRIDGE'S EXPERT OPINIONS AND CONCLUSIONS ARE RELEVANT TO THIS PARTICULAR CASE.[5]

Relevance is primarily defined by evidence or testimony that will assist the jury in determining factual issues. Daubert, 509 U.S. at ¶14. The standard for determining relevant evidence is a liberal one. Id. at ¶2. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id.

This case presents numerous issues that require expert testimony. The underlying issues in this case deal with police conduct, police training, use of force, police policies and procedures, and arrest techniques. The average lay person that will make up the jury panel will not understand the above mentioned issues because it is not

---

[3] The defendants attack Mr. Doddridge on his view of the war against drugs.
[4] On the contrary, those that share this same ideology may well be recognized in the future as forward thinkers. Either way, his personal views on unrelated topics are irrelevant.
[5] Although the defendants do not challenge Mr. Doddridge's opinions on relevance grounds, plaintiffs set forth argument that his opinions are relevant in the event his opinions are challenged on such grounds.

14

general knowledge. Only those people who are in law enforcement or other related agencies that specialize in these areas of law will have a general understanding of the issues in this case.

As a qualified expert in this particular field, Mr. Doddridge will be able to shed light on these issues, empowering the jury with knowledge and understanding to render a verdict in this case. Without an understanding of the issues in this case, that only an expert in Mr. Doddridge's field can explain, the jury would be left incompetent, rendering a verdict tainted with injustice.

## **CONCLUSION**

Pursuant to Rule 702, Mr. Doddridge may testify in this case as an expert. Mr. Doddridge is qualified, his expert opinions and conclusions are based upon reliable facts and data, and his expert opinions and conclusions are relevant to the issues in this case.

Accordingly, plaintiff's respectfully request this court deny Defendants' Motion in Limine for David Doddridge.

DATED this 22 day of January, 2013.

                                              ROBERT J. DeBRY & ASSOCIATES

                                              _____/S/_____
                                              RILEY T. WADDOUPS
                                              Attorney for Plaintiffs

## CERTIFICATE OF MAILING

      I hereby certify a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE FOR DAVID DODDRIDGE** was mailed in the United States, first class postage prepaid, on this ___ day of _____, 2013, to the following:

David H. Wayment  
Donald Hansen  
Attorneys for Defendants  
Salt Lake County District Attorney  
2001 South State Street, S3600  
Salt Lake City, UT  84190

                                                _____

Doc# 213